RUSSIAN VOLUNTEER FLEET *v.* UNITED STATES.

No. 39. Argued December 12, 1930.—Decided February 24, 1931.

Mr. *William L. Rawls*, with whom *Messrs. Charles Recht, Horace S. Whitman, William L. Marbury, Jr.,* and *Osmond K. Fraenkel* were on the brief, for petitioner.

484.

*Mr. Claude R. Branch,* Special Assistant to the Attorney General, with whom *Solicitor General Thacher, Assistant Attorney General Rugg* and *Messrs. Percy M. Cox, Erwin N. Griswold, H. Brian Holland, Green H. Hackworth,* Solicitor, Department of State, and *Francis M. Anderson,* Assistant Solicitor, were on the brief, for the United States.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

The petitioner brought this suit against the United States in the Court of Claims to recover just compensation for the requisitioning by the United States Shipping Board Emergency Fleet Corporation, under authority

delegated to it by the President, of contracts for the construction of two vessels. The Court of Claims dismissed the petition for the want of jurisdiction. 68 Ct. Cls. 32. This Court granted a writ of certiorari. 281 U. S. 711.

The petition, filed in October, 1924, alleged that the petitioner " is a corporation duly organized under, and by virtue of, the Laws of Russia "; that in January, 1917, the petitioner became the assignee for value of certain contracts for the construction of two vessels by the Standard Shipbuilding Corporation of New York; that in August, 1917, the United States Shipping Board Emergency Fleet Corporation, acting under the authority conferred by the Act of June 15, 1917 (c. 29, 40 Stat. 183) and by the Executive Order of the President of the United States made on July 11, 1917, requisitioned these contracts, and the vessels being constructed thereunder, for the use of the United States; that the United States thereby became liable to the petitioner for the payment of just compensation; that in August, 1919, the petitioner submitted its affidavit of claim, and vouchers in support; that in March, 1920, the United States Shipping Board Emergency Fleet Corporation fixed the just compensation of the petitioner at a total amount of $1,412,532.35; that the value of the contracts taken from the petitioner was $4,000,000, to which the petitioner was entitled after allowing all proper credits and offsets; and that " citizens of the United States are and at the time of and since the commencement of this suit have been accorded the right to prosecute claims against the Russian Government in the Court of that Government."

In May, 1927, the petitioner filed motions to issue commissions to take testimony in Germany and France; the defendant objected, and the motions were overruled. The petitioner then gave notice of the taking of testimony in Washington, D. C., whereupon the defendant moved to quash the notice upon the ground that the

Court was without jurisdiction of the subject matter of the proceeding. On the submission of that motion, the petition was dismissed. The Court of Claims held that, as the United States Government had not recognized the Union of Soviet Socialist Republics in Russia, the petitioner was not entitled to maintain its suit in view of section 155 of the Judicial Code (U. S. C., Tit. 28, § 261). That section is as follows: "Sec. 155. Aliens who are citizens or subjects of any government which accords to citizens of the United States the right to prosecute claims against such government in its courts, shall have the privilege of prosecuting claims against the United States in the Court of Claims, whereof such court, by reason of their subject matter and character, might take jurisdiction." The court said that the reference to citizens or subjects of " any government " meant such governments as were recognized by the proper authorities of the United States.

The Government in its argument here, while submitting the case on the opinion of the Court of Claims and not confessing error, presents the view that section 155 of the Judicial Code does not apply to this suit, which was brought under the provisions of the Act of June 15, 1917. With respect to the matter of recognition, the Government appends to its brief a letter of the Secretary of State of the United States, under date of December 5, 1930, stating that " the Provisional Government of Russia, the successor of the Imperial Government of Russia, was recognized by the Government of the United States on March 22, 1917 "; that, " according to the Department's information, the Provisional Government of Russia was overthrown by an armed uprising which took place in the early part of November, 1917," and that " the Government of the United States has not extended recognition to any régime established in Russia subsequent to the overthrow of the Provisional Government."

As the facts alleged in the petition were admitted by the motion to dismiss, the allegation that the petitioner is a corporation duly organized under the laws of Russia stands unchallenged on the record. There was no legislation which prevented it from acquiring and holding the property in question. The petitioner was an alien friend, and as such was entitled to the protection of the Fifth Amendment of the Federal Constitution. *Wong Wing v. United States*, 163 U. S. 228, 238; compare *Yick Wo v. Hopkins*, 118 U. S. 356, 369; *Santa Clara County v. Southern Pacific R. Co.*, 118 U. S. 394, 396; *Truax v. Raich*, 239 U. S. 33, 39; *Terrace v. Thompson*, 263 U. S. 197, 216; *Home Insurance Co. v. Dick*, 281 U. S. 397, 411. Exerting by its authorized agent the power of eminent domain in taking the petitioner's property, the United States became bound to pay just compensation. *United States v. Great Falls Mfg. Co.*, 112 U. S. 645, 656; *United States v. North American Co.*, 253 U. S. 330, 333; *Campbell v. United States*, 266 U. S. 368, 370, 371; *Phelps v. United States*, 274 U. S. 341, 343, 344; *International Paper Co. v. United States, ante*, p. 399. And this obligation was to pay to the petitioner the equivalent of the full value of the property contemporaneously with the taking. *Phelps v. United States, supra; Brooks-Scanlon Corp. v. United States*, 265 U. S. 106, 123.

The Congress recognized this duty in authorizing the expropriation. The Act of June 15, 1917, under which the requisition was made, provided for the payment of just compensation. The Congress did not attempt to give to any officer or administrative tribunal the final authority to determine the amount of such compensation[1], and recovery by suit against the United States was

---

[1] See *United States v. Jones*, 109 U. S. 513, 519; *Monongahela Navigation Co. v. United States*, 148 U. S. 312, 327; *Long Island Water Supply Co. v. Brooklyn*, 166 U. S. 685, 695; *Backus v. Fort Street Union Depot Co.*, 169 U. S. 557, 559; *United States v. Bab-*

made an integral part of the legislative plan of fulfilling the constitutional requirement. The Act provided as follows: "Whenever the United States shall . . . requisition any contract, . . . requisition, acquire or take over . . . any ship, . . . in accordance with the provisions hereof, it shall make just compensation therefor, to be determined by the President; and if the amount thereof, so determined by the President, is unsatisfactory to the person entitled to receive the same, such person shall be paid seventy-five per centum of the amount so determined by the President and shall be entitled to sue the United States to recover such further sum as, added to said seventy-five per centum, will make up such amount as will be just compensation therefor, in the manner provided for by section twenty-four, paragraph twenty, and section one hundred and forty-five of the Judicial Code." Section 24, paragraph 20, of the Judicial Code, U. S. C., Tit. 28, § 41, subd. (20), gives jurisdiction to the District Courts of the United States, concurrent with the Court of Claims, of claims against the United States not exceeding $10,000, founded upon the Constitution, or any law of Congress, or upon any contract, express or implied, with the Government of the United States, when the claimant would be entitled to redress against the United States in a court of law, equity, or admiralty, if the United States were suable. The case of an alien friend is not excepted. Section 145 of the Judicial Code (U. S. C., Tit. 28, § 250) gives to the Court of Claims jurisdiction of suits on similar claims against the United States without limit of amount. The authority con-

cock, 250 U. S. 328, 331; Bragg v. Weaver, 251 U. S. 57, 59; Seaboard Air Line Ry. Co. v. United States, 261 U. S. 299, 304; North Laramie Land Co. v. Hoffman, 268 U. S. 276, 285, 286; Great Northern Ry. Co. v. United States, 277 U. S. 172, 182; Dohany v. Rogers, 281 U. S. 362, 369.

ferred upon the President by the Act of June 15, 1917, was exercised by him through the United States Shipping Board Emergency Fleet Corporation, and as the compensation fixed by that Corporation was not satisfactory to the petitioner, it became entitled under the express terms of the Act to bring suit against the United States to recover the amount justly payable by reason of the requisition.

The Act of June 15, 1917, makes no reference to section 155 of the Judicial Code with respect to alien suitors, and the question is whether that provision should be implied as establishing a condition precedent and the recovery thus be defeated. It is at once apparent that such an implication would lead to anomalous results. It would mean that, although the United States had actually taken possession of the property and was enjoying the advantages of its use, and the alien owner was unquestionably entitled to compensation at the time of the taking, it was the intention of the Congress that recovery should be denied, or at least be indefinitely postponed until the Congress made some other provision for the determination of the amount payable, if it appeared that citizens of the United States were not entitled to prosecute claims against the government of the alien's country in its courts, or that the United States did not recognize the régime which was functioning in that country.

We find no warrant for imputing to the Congress such an intention. "Acts of Congress are to be construed and applied in harmony with and not to thwart the purpose of the Constitution." *Phelps* v. *United States, supra.* The Fifth Amendment gives to each owner of property his individual right. The constitutional right of owner A to compensation when his property is taken is irrespective of what may be done somewhere else with the property of owner B. As alien friends are embraced within

the terms of the Fifth Amendment, it cannot be said that their property is subject to confiscation here because the property of our citizens may be confiscated in the alien's country. The provision that private property shall not be taken for public use without just compensation establishes a standard for our Government which the Constitution does not make dependent upon the standards of other governments. The Act of Congress should be interpreted in the light of its manifest purpose to give effect to the constitutional guaranty.

Nor do we regard it as an admissible construction of the Act of June 15, 1917, to hold that the Congress intended that the right of an alien friend to recover just compensation should be defeated or postponed because of the lack of recognition by the Government of the United States of the régime in his country. *A fortiori,* as the right to compensation for which the Act provided sprang into existence at the time of the taking, there is no ground for saying that the statute was not to apply, if at a later date, and before compensation was actually made, there should be a revolution in the country of the owner and the ensuing régime should not be recognized. The question as presented here is not one of a claim advanced by or on behalf of a foreign government or régime, but is simply one of compensating an owner of property taken by the United States.

The Act of June 15, 1917, if read according to its terms, presents no difficulty. A condition should not be implied which, to say the least, would raise a grave question as to the constitutional validity of the Act. *Federal Trade Comm.* v. *American Tobacco Co.,* 264 U. S. 298, 307; *Missouri Pacific R. Co.* v. *Boone,* 270 U. S. 466, 471, 472; *Blodgett* v. *Holden,* 275 U. S. 142, 148; *Richmond Screw Anchor Co.* v. *United States,* 275 U. S. 331, 346; *Lucas* v. *Alexander,* 279 U. S. 573, 577.

*Judgment reversed.*