## UNITED STATES v. BELMONT et al.
### No. 461.

Circuit Court of Appeals, Second Circuit.
Aug. 10, 1936.

Lamar Hardy, U. S. Atty., of New York City (David E. Hudson, Sp. Asst. to Atty. Gen., Henry Munroe, Sp. Atty., Department of Justice, Edward J. Ennis, Asst. U. S. Atty., and Myron S. Isaacs, all of New York City, of counsel), for the United States.

Cadwalader, Wickersham & Taft, of New York City (John W. Davis, Cornelius W. Wickersham, William C. Cannon, and Daniel E. Woodhull, Jr., all of New York City, of counsel), for appellees.

Robert J. Sykes, of New York City (Robert J. Sykes and William C. Morris, both of New York City, of counsel), for president and directors of Manhattan Co., amicus curiæ.

Borris M. Komar, of New York City, for Day-Gormley Leather Co., amicus curiæ.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

This is an appeal by the United States from a judgment which dismissed its amended complaint on the ground that it fails to state facts constituting a cause of action. The complaint is based on a demand upon the executors of August Belmont for payment of money deposited with him prior to 1918 by a Russian corporation known as the "Petrograd Metal Works," and a refusal by the executors to pay. The theory of the action is that the Russian government by decree of June 28, 1918, confiscated the property of the metal works

including its account against Belmont, and thereafter assigned the account to the United States.

The assignment to the United States is based upon an exchange of diplomatic correspondence between Commissar Litvinov and President Roosevelt, and a question is raised whether Mr. Litvinov's letter was intended to cover the deposit account in suit. It is urged that it should be construed to assign only claims owed directly to the present Russian government or predecessor governments by American nationals, not claims acquired by confiscation of the property of Russian nationals. But we think the language is too broad to permit of this construction. As this court said of the Litvinov letter in State of Russia v. Nat. City Bank, 69 F.(2d) 44, 48: "it is apparent that the intent was to assign all the claims of the Soviet government to the United States." See, also, United States v. Bank of New York & Trust Co., 77 F.(2d) 866, 871 (C.C.A.2).

■ The next question is whether the decree of June 28, 1918, purported to confiscate the deposit account in suit and transfer title thereto to the Russian government; if it did not, no title was passed to the United States by the assignment. United States v. Buford, 3 Pet. 12, 30, 7 L.Ed. 585. It is argued by the appellees that the decree should be construed to confiscate only property located within the borders of the Soviet Republic and therefore did not cover the deposit account, whose situs must be deemed to be New York since it was payable here. Such, it is said, has been the construction accorded the decree by the Russian government itself, as indicated by two official circulars to which reference was made by the court in The Jupiter, L. R. 1927 P. 122, 144–147. The complaint, however, alleges that the decree, which is appended as an exhibit, caused the deposit account to become the property of the Russian State. Verbally the language of the decree is sufficiently broad to extend to property of the nationalized corporations wherever located, and the allegation that the deposit account was confiscated must, on demurrer, be accepted as true. We are not at liberty, therefore, to look to other sources of Russian law which may interpret the decree differently than has the pleader. If the allegation is incorrect, it should be challenged by a denial and the issue so framed be determined by proof of the Russian law as a fact.

Hence the present appeal must be decided on the assumption that the Soviet Republic attempted to confiscate the deposit account in suit and assigned whatever title it thus acquired to the United States.

■ With respect to property physically located within Russian territory there can be no doubt that the decree of confiscation was effective to transfer title, and that after recognition of the Soviet government by the executive branch of our own government, the courts of this country must enforce titles and rights valid according to Russian law with respect to such property. Oetjen v. Central Leather Co., 246 U.S. 297, 38 S.Ct. 309, 62 L.Ed. 726; Luther v. Sagor, L.R. 1921, 3 K.B. 532. Mr. Justice Clarke quoted the doctrine in the following words in the Oetjen opinion, 246 U.S. 297, at page 303, 38 S.Ct. 309, 62 L.Ed. 726: "Every sovereign State is bound to respect the independence of every other sovereign State, and the courts of one country will not sit in judgment on the acts of the government of another done within its own territory. Redress of grievances by reason of such acts must be obtained through the means open to be availed of by sovereign powers as between themselves." But the doctrine is otherwise with respect to property outside its own territory, which a foreign state attempts to confiscate. Laws of foreign governments have extraterritorial effect only by comity and the public policy of the forum determines whether its courts will give effect to foreign legislation. It is very clear that it is contrary to the public policy of the state of New York to enforce confiscatory decrees with respect to property located here at the date of the decree. Vladikavkazsky Ry. Co. v. New York Trust Co., 263 N.Y. 369, 378, 189 N.E. 456, 91 A. L.R. 1426; see, also, N.Y.Sess.Laws 1936, c. 917, adding Civil Practice Act, § 977-b. The same general principle is recognized in Baglin v. Cusenier Co., 221 U.S. 580, 596, 31 S.Ct. 669, 55 L.Ed. 863. Also in England. Lecouturier v. Rey., L.R.1910 A.C. 262, 265. This is likewise the view prevailing in most of the European countries. See authorities collected in 39 Yale L.J. 1130, 1153 et seq.

The question then becomes whether the metal works' credit with August Belmont, the defendant's testator, was property within Russia or within New York. According to the maxim, "Mobilia sequuntur personam," the plaintiff argues that the situs of a debt is the domicil of the creditor. Blod-

gett v. Silberman, 277 U.S. 1, 9, 48 S.Ct 410, 72 L.Ed. 749. But that maxim is not of universal application. In Security Savings Bank v. California, 263 U.S. 282, 285, 44 S.Ct. 108, 110, 68 L.Ed. 301, 31 A.L.R. 391, the court said: "Over this intangible property [money on deposit] the state has the same dominion that it has over tangible property." Similarly in Russian Bank for Foreign Exchange, L.R.1933 Ch.Div. 745, 767, in speaking of a debt payable in London, Lord Maugham stated that: "Its locality must be taken to be the place where the debt was in the ordinary course recoverable." To the same effect is In re Houdayer's Estate, 150 N.Y. 37, 40, 44 N.E. 718, 34 L.R.A. 235, 55 Am.St.Rep. 642. Compare, also, American Law Institute, Restatement, Conflict of Laws, §§ 213, 258, 300-310. When suit is brought in New York to collect a debt, its courts certainly have power to determine to whom the debt is owed. They have expressly refused to recognize the Russian government's title to such a debt based on the confiscatory decree in question. Vladikavkazsky Ry. Co. v. New York Trust Co., 263 N.Y. 369, 189 N.E. 456, 91 A.L.R. 1426. The distinction between a debt payable here and one payable in Russia is pointed out in Dougherty v. Equitable Life Assur. Soc., 266 N.Y. 71, 88, 193 N.E. 897.

■■ Finally, it is urged that recognition of the Soviet government by the United States, acceptance of the assignment, and institution of the present suit demonstrate that the public policy of the United States is not opposed to enforcement of the confiscatory decree. Recognition permits Russia to resort to our courts and have its rights judged by the same principles as apply to other litigants. It expresses no policy as to what those principles are. Nor can the assignment and the bringing of suit give the assignee any greater right than the assignor had. United States v. Buford, 3 Pet. 12, 30, 7 L.Ed. 585. Confiscation of property within the United States is precluded by the Fifth Amendment to the Constitution. Russian Volunteer Fleet v. United States, 282 U.S. 481, 51 S.Ct. 229, 75 L.Ed. 473. If the public policy of the United States is material, it would seem clearly adverse to a claim based on the Russian decree. But in our opinion it is the policy of New York which this court is to apply. The question is whether the plaintiff's assignor had an enforcible right as successor to the Russian corporation aft-

er its nationalization. This is really a question of title and state law, not federal law, governs the matter of title. Under the state law as declared by very recent legislation (N.Y.Sess.Laws, 1936, c. 917, adding Civil Practice Act, § 977-b), the title of the confiscating government is not to be recognized at least until after the expiration of the period within which creditors or stockholders may claim it. Whether the Russian government or its assignee may thereafter sue, if no such claim has been made, is not now before us; but affirmance of the judgment should be, and is hereby declared to be, without prejudice to such an action in that event.

Judgment affirmed.

MANTON, Circuit Judge (dissenting).

I dissent. See dissenting opinion in United States v. Bank of New York & Trust Co. (C.C.A.) 77 F.(2d) 866.