**FOSTER v. UNITED STATES.**

No. 48546.

United States Court of Claims.

Decided July 9, 1951.

---

350

Nathan L. Silberberg, Washington, D. C., for plaintiff.

Gordon F. Harrison, Washington, D. C., with whom was Asst. Atty. Gen. Holmes Baldridge, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

MADDEN, Judge.

In August 1944, the plaintiff, then a major, was the intelligence officer of the 330th Regiment of the 83d Infantry Division. This division was in combat in the area of St. Malo, France. The German troops had been compressed into a small area in that city, and prisoners were being taken. Civilian refugees were passing through the Allied lines toward the rear of the combat area.

The plaintiff discovered an overnight bag lying some thirty feet from a paved highway. He opened it and found that it contained women's clothing with French labels, cosmetics, and a purse containing an amount of paper money in 1,000-franc French notes. No mark was present by which to identify the owner, and no one has ever claimed to have been the owner. There were no women among the German military forces in the area.

The plaintiff took the purse and its contents to the command post which was only 100 yards away, reported the incident to his superiors and others present, and said that he would claim the money as lost property. He left the money at the command post. Some hours later he counted it. A day or two later he sent the money by a messenger to the division finance officer some miles to the rear. He told the messenger the circumstances of his possession of the money, and asked him to get a receipt for it. The messenger brought the plaintiff a receipt for $4,129.12 and described the

money as "currency abandoned by German troops." The plaintiff objected to the form of the receipt, and, at his first opportunity went to the finance office and asked for a different receipt. He was told by the assistant in charge that that was the only receipt which the office could give, but that the money would be returned to him if he would surrender the receipt. The plaintiff could not, or did not wish to, keep the money with him, and left it with the finance office. It was covered into the general fund of the Treasury of the United States to the credit of Miscellaneous Receipt Account 213897 "Funds and Proceeds of other Public Property Captured from the Enemy." A demand by the plaintiff, made after the war, for payment, was rejected by the Department of the Army on the ground that the money belonged to the Government. The plaintiff sues for $4,129.12, the value of the French currency.

■ The Government denies our jurisdiction, saying that, in the circumstances no promise, express or implied in fact, can be spelled out whereby the Government made any contract with the plaintiff. We agree that the attitude of the Government, as shown by the receipt given the plaintiff by the finance office, and the later rejection of his claim, has been adverse to the plaintiff, and that those acts carried no implication of a promise to return the money to him or pay him its value.

■ The statute by which the Government waives its sovereign immunity from suit in certain situations, does not limit our jurisdiction to cases of contracts. Indeed, the first named ground of our jurisdiction is upon claims

(1) Founded upon the Constitution. Act of June 25, 1948, ch. 646, § 1, 62 Stat. 940, 28 U.S.Code § 1491.

■ This basis of jurisdiction was first created by the Act of March 3, 1887, 24 Stat. 505, the Tucker Act. We recognize that there were decisions of the Supreme

Court of the United States which gave slight effect to this new and independent ground of jurisdiction, holding that it was still necessary, in a case involving the taking of private property for public use, to show that the Government did not take under a claim of right, but in recognition of the private person's ownership, and in circumstances implying a promise to pay him just compensation. See, e. g., Hill v. United States, 149 U.S. 593, 13 S.Ct. 1011, 37 L.Ed. 862; Tempel v. United States, 248 U.S. 121, 39 S.Ct. 56, 63 L.Ed. 162. But see the concurring opinion of Justice Brown, concurred in by Justices Shiras and Peckham, in United States v. Lynah, 188 U.S. 445, 23 S.Ct. 349, 47 L.Ed. 539. But in its recent decisions the Supreme Court has recognized that claims "founded upon the Constitution" may be sued upon, whether or not the circumstances also give rise to a contract implied in fact. In United States v. Causby, 328 U.S. 256, 267, 66 S.Ct. 1062, 1068, 90 L.Ed. 1206, the Government contended that it had in no way recognized a right in the plaintiff not to have the Government's aircraft fly low over the plaintiff's land, and that therefore, if its flights were wrongful, they were merely a succession of trespasses, for whose redress this court had no jurisdiction. But the Supreme Court said: "We need not decide whether repeated trespasses might give rise to an implied contract. * * * If there is a taking, the claim is 'founded upon the Constitution' and within the jurisdiction of the Court of Claims to hear and determine. See Hollister v. Benedict & Burnham Mfg. Co., 113 U.S. 59, 67, 5 S.Ct. 717, 721, 28 L.Ed. 901; Hurley v. Kincaid, 285 U.S. 95, 104, 52 S.Ct. 267, 269, 76 L.Ed. 637; Yearsley v. W. A. Ross Construction Co., 309 U.S. 18, 21, 60 S.Ct. 413, 415, 84 L.Ed. 554. Thus the jurisdiction of the Court of Claims in this case is clear."

And the Supreme Court held that the plaintiff could recover just compensation.[1] We conclude, therefore, that if the plaintiff can show that money, to which he had a

---

1. See the language of the Supreme Court in Russian Volunteer Fleet v. United States, 282 U.S. 481 at pages 491, 492, 51 S.Ct. 229, 75 L.Ed. 473, where it is suggested that the construing of the jurisdictional act of the Court of Claims so as to deny to an owner whose property had been taken the right to sue would raise grave doubts as to the constitutionality of the act.

better title than the United States is being kept from him by the United States for its own use, this court has jurisdiction, because the plaintiff's claim is founded upon the Fifth Amendment of the Constitution, it being a taking of private property for public use without just compensation.

We proceed to the question of the plaintiff's right to the money. He claims it as a finder. If the common law or the French law applicable to private persons governs the situation, the plaintiff was and is entitled, as finder, against all the world except the true owner, the loser. But the Government contends that the law of finders does not apply, in the circumstances. It points to Article of War No. 80 which says:

"Any person subject to military law who buys, sells, trades, or in any way deals in or disposes of captured or abandoned property, whereby he shall receive or expect any profit, benefit, or advantage to himself or to any other person directly or indirectly connected with himself, or who fails whenever such property comes into his possession or custody or within his control to give notice thereof to the proper authority and to turn over such property to the proper authority without delay, shall, on conviction thereof, be punished by fine or imprisonment, or by such other punishment as a court-martial, military commission, or other military tribunal may adjudge, or by any or all of said penalties." Act of June 4, 1920, ch. 227, subch. II, § 1, 41 Stat. 804, 10 U.S.C.A. 1552.

We think that the French money here in question was abandoned property, within the meaning of this Article of War, when the plaintiff took possession of it. The word abandoned covers not only property abandoned by the enemy, but by civilian populations in flight from the perils of the combat zone, or from the bombed area, and who have left something behind or cast it aside to expedite their escape. The extent of such abandonment of valuables in the Second World War was prodigious, and the impossibility of policing an army to make sure that soldiers limited themselves to picking up abandoned property and did not loot refugees showed the wisdom of this Article of War. We construe the Article, therefore, as meaning that a soldier may not make a profit out of the disorder and flight which ensues from war. In the abandoned property which he comes upon, and which he must turn over to the proper authority without delay, he does not acquire any proprietary interest. His taking possession of it is done as an agent of the Government, and if it is not reclaimed by the owner who abandoned it, it belongs to the Government.

The plaintiff's petition will be dismissed.

It is so ordered.

JONES, Chief Judge, and HOWELL, WHITAKER and LITTLETON, Judges, concur.