**BARAS PLANTATION CO., Inc. v. UNITED STATES.**

No. 49251.

United States Court of Claims.

July 15, 1952.

Joseph Fairbanks, Washington, D. C., Fairbanks, Stafford & Fairbanks, Washington, D. C., on the brief, for plaintiff.

Thomas O. Fleming, Washington, D. C., Holmes Baldridge, Asst. Atty. Gen., Lawrence Smith, Washington, D. C., on the brief, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

JONES, Chief Judge.

The single substantial issue in this case is the value at the time of taking of 1,349 coconut-bearing palm trees which were cut down or removed from the Baras Plantation during the late spring and summer of 1945. They were cut or removed by the armed forces for making or improving roads, for use as posts for telephone or electric wiring, for bridges, a pier, foundations, buildings and other military purposes, including the expansion and improvement of the airfield located near the plantation.

The defendant pleads that the property was taken in the course of a campaign, and

that since it was done under the pressure of military necessity in a combat zone no recovery may be had.

The record does not justify any such finding or anything like it.

Prior to the war the army had established an airfield in that area. In 1941 the army extended the airstrip across a portion of plaintiff's property. That action is not involved here.

The Japanese occupied the airfield and the plantation from April 1942 to April 17, 1945. About April 17, 1945, the military forces of the United States landed some three or four miles away and immediately took possession of the plantation and the airfield. Both had theretofore been vacated by the Japanese and the Philippine guerrilla forces had taken possession of the plantation and airfield. There was no Japanese opposition and no Japanese were encountered. The initial landing was accomplished by one engineering aviation battalion accompanied by not more than one company of infantry. A larger number of troop landings had been contemplated, but when it was learned that the airfield area was cleared of Japanese and in the hands of the guerrilla forces the number was reduced, and the infantry battalion left for the south within a week. There was no naval bombardment, and no enemy opposition in that area, then or later. There was no fighting within fifty miles. It was not necessary to camouflage the airport. Guards were posted, not for protection, but to prevent theft by natives.

The airfield was expanded and used for the take-off of American planes to protect units many miles distant, and some of the trees involved herein were used in that connection.

American military forces continued in possession until after the end of hostilities, the last American troops being withdrawn from the plantation about November 10, 1945.

The trees were cut down during military possession of the United States forces and used as indicated.

In the oral argument defendant's counsel advanced the plea that since the plaintiff was a Philippine corporation it was not entitled to the protection of the Fifth Amendment. The contrary is held in the case of Russian Volunteer Fleet v. United States, 282 U.S. 481, 51 S.Ct. 229, 232, 75 L.Ed. 473. We quote from that opinion the following:

" * * * The constitutional right of owner A to compensation when his property is taken is irrespective of what may be done somewhere else with the property of owner B. As alien friends are embraced within the terms of the Fifth Amendment, it cannot be said that their property is subject to confiscation here because the property of our citizens may be confiscated in the alien's country. The provision that private property shall not be taken for public use without just compensation establishes a standard for our government which the Constitution does not make dependent upon the standards of other governments."

The evidence varied greatly as to the value of the trees at the time of taking. In one of the two years covered by the evidence as to the returns before the war the company had a slight loss and in the other a small gain. Following the war profits were considerably increased in 1947 and 1948, but conditions then were somewhat abnormal. There is no doubt that the trees deteriorated through neglect during Japanese occupation.

In the light of the entire record we find that the fair and reasonable value of the trees at the time and place of taking was $6 each.

Plaintiff is entitled to recover the sum of $8,094, with interest thereon at the rate of 4 percent per annum from April 18, 1945, to date of payment, as a part of just compensation.

HOWELL, MADDEN, WHITAKER, and LITTLETON, Judges, concur.