### UNITED STATES ex rel. BARILE
### v.
### MURFF.
### Civ. A. No. 6954.

United States District Court
D. Maryland, Civil Division.
Nov. 10, 1953.

---

H. Raymond Cluster, Baltimore, Md., for relator.

George Cochran Doub, U. S. Atty., Walter E. Black, Jr., Asst. U. S. Atty., Baltimore, Md., Abraham Scharf, Department of Immigration and Naturalization, Baltimore, Md., for respondent.

CHESNUT, District Judge.

The petitioner, an alien, is seeking a writ of habeas corpus to release him from the custody of the Commissioner of Immigration under a warrant for deportation. A rule to show cause was issued on the filing of the petition and after the respondent's return a hearing was promptly held on the papers and arguments submitted.

The warrant for deportation is based on the authority of the Immigration and Nationality Act of 1952, § 241(a)(4), 8 U.S.C.A. § 1251(a)(4), the McCarran Act. The relevant portion of the section reads as follows:

"(a) Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported * * * —(4) * * * who at any time after entry is convicted of two crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial".

It appears from the papers in the case that the petitioner has been twice convicted in this court of crimes involving moral turpitude. On March 6, 1941 he was convicted of possessing untax-paid distilled spirits with intent to defraud the Government of taxes, and was sentenced thereon to six months in prison and $100 fine; and on November 4, 1947 he was convicted of a similar charge on a plea of not guilty and sentenced to two years and a fine of $2,000. It is not denied that these offenses involved moral

turpitude. Jordan v. DeGeorge, 341 U.S. 223, 71 S.Ct. 703, 95 L.Ed. 886. This case therefore falls precisely within the provisions of section 1251(a)(4).

It also appeared that the petitioner originally entered this country in 1924 as a member of the crew of a ship which he subsequently deserted and thereafter has remained in the country until the present time without having applied for naturalization. In 1927 he married and states that he has six children, three adults and three minors, all partially or possibly wholly dependent upon him. His occupation or activities in this country have not been stated. He was arrested by the Immigration Department on February 18, 1953 and given a hearing in customary course which finally resulted in a warrant for deportation, as he did not prosecute an administrative appeal within the Department but applied for a Presidential pardon on which no action has been taken.

 The apparent contention of the petitioner, as stated in the petition, was that his deportation would not be justified under section 1251(a)(4) because it constituted retrospective legislation in that prior to the passage of the Immigration and Nationality Act of 1952 the conviction of two offenses of moral turpitude not resulting in sentences of more than a year did not constitute cause for the deportation of an alien. However, on the hearing of the case counsel for the petitioner abandoned that contention in view of the recent clear decision of the Supreme Court to the effect that legislation affecting aliens is not invalid merely because it is retrospective in operation. U. S. ex rel. Eichenlaub v. Shaughnessy, 338 U.S. 521, 70 S.Ct. 329, 94 L.Ed. 307; Mahler v. Eby, 264 U.S. 32, 44 S.Ct. 283, 68 L. Ed. 549. Nor is it contended that the legislation is invalid in contravention of Article I, § 9 of the Constitution forbidding the passage of ex post facto laws, as deportation proceedings are not criminal in nature. Harisiades v. Shaughnessy, 342 U.S. 580, 72 S.Ct. 512, 96 L. Ed. 586. But the contention now urged

for the petitioner is that section 1251 (a)(4) as here applicable has unconstitutional effect in that it violates provisions of the 5th Amendment regarding due process of law. The specific point made in this connection is that the legislation as here sought to be applied is so harsh and discriminatory in effect that it is lacking in due process.

More particularly it is urged that under prior legislation regarding grounds for deportation of aliens, an alien convicted of two crimes of moral turpitude involving sentences of more than a year in each, might escape the effects of the cause for deportation if the sentencing judge within thirty days after the sentence recommended that the alien be not deported. It is further pointed out that under the present Immigration and Nationality Act of 1952, § 1251(b), aliens subject to deportation under section 1251(a)(4) may likewise escape the effects thereof upon a similar recommendation by the court.

 Counsel for the petitioner says that under the prior legislation existing at the time of his convictions in 1941 and 1947, there was no need or occasion for him to apply for a recommendation of the court that he be not deported because under the then existing law he was not deportable in that while he had been sentenced in two separate cases for offenses involving moral turpitude the sentence in only one of them was for more than one year. The precise contention, therefore, is that the present Act arbitrarily and unreasonably discriminates against the petitioner, who was convicted of two crimes of moral turpitude before the passage of the present Act, as compared with aliens who after the passage of the Act may be convicted of two such crimes and who now have the possibility of escaping deportation by virtue of a court recommendation.

Counsel for the petitioner frankly state that they have been able to find no authority in favor of the contention now made and on careful consideration of the subject matter, in my opinion the

contention is not sound. In effect it is, I think, merely a restatement in other words of the broader untenable contention with regard to retrospective legislation affecting aliens. I think it was currently understood during consideration by Congress of the Immigration and Nationality Act that one of the purposes was to pass legislation which would increase the power and authority of the Immigration Department to deport aliens who were considered under the tests of the law undesirable. It is clear enough that the petitioner was not deportable under the prior legislation but his case falls squarely within the provision of the McCarran Act. In my opinion that legislation was well within the powers of Congress affecting aliens.

In Harisiades v. Shaughnessy, 342 U. S. 580, 72 S.Ct. 512, 519, it was said:

"* * * any policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government * * * [and] are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference."

A lawful resident alien is a "person" within the meaning of the 5th Amendment providing that no person can be deprived of life, liberty or property without due process of law to the extent that the alien cannot be deprived of his property by the federal government without just compensation (assuming that he is not an enemy alien), Russian Volunteer Fleet v. United States, 282 U.S. 481, 51 S.Ct. 229, 75 L.Ed. 473; nor can he be deported without a hearing that affords procedural due process, Kwong Hai Chew v. Colding, 344 U.S. 590, 73 S.Ct. 472. But with regard to deportation of aliens Congress has very broad powers. The alien's right to continue residence here is not a vested property right protected by the 5th Amendment. The extent of the power of Congress was well expressed by Judge Learned Hand in U. S. ex rel. Kaloudis v. Shaughnessy, 2 Cir., 180 F.2d 489, 490:

"The interest which an alien has in continued residence in this country is protected only so far as Congress may choose to protect it; Congress may direct that all shall go back, or that some shall go back and some may stay; and it may distinguish between the two by such tests as it thinks appropriate."

Many years ago in Fong Yue Ting v. United States, 149 U.S. 698, 724, 13 S. Ct. 1016, 1026, 37 L.Ed. 905, it was said by the Supreme Court:

"* * * all * * * aliens residing in the United States * * * are entitled, *so long as they are permitted by the government of the United States to remain in the country,* to the safeguards of the constitution, and to the protection of the laws, in regard to their rights of person and of property, and to their civil and criminal responsibility. *But they continue to be aliens * * and therefore remain subject to the power of congress to expel them, or to order them to be removed and deported from the country, whenever, in its judgment, their removal is necessary or expedient for the public interest."* (Italics supplied.)

I have considered other cases referred to by counsel for the petitioner and find them inapplicable here as they do not involve legislation affecting the deportation of aliens. The equal protection clause of the 14th Amendment is, of course, not here involved.

For these reasons I conclude that the petition for the writ must be and it is hereby dismissed.