Marie Louise **WILLENBROCK**

v.

William P. **ROGERS**, Attorney General of
the United States, as Successor to the
Alien Property Custodian, Appellant.

No. 12394.

United States Court of Appeals
Third Circuit.

Argued March 18, 1958.

Decided April 22, 1958.

Rehearing Denied May 27, 1958.

George B. Searls, Washington, D. C.
(Dallas S. Townsend, Asst. Atty. Gen.,
Harold K. Wood, U. S. Atty., for the
Eastern Dist. Pennsylvania, Philadel-
phia, Pa., Irwin A. Seibel, Marbeth A.
Miller, Attys., Dept. of Justice, Washing-
ton, D. C., on the brief), for defendant-
appellant.

T. Henry Walnut, Philadelphia, Pa.,
for appellee.

Before GOODRICH, STALEY and
HASTIE, Circuit Judges.

GOODRICH, Circuit Judge.

This appeal concerns the application of
words in the Trading with the Enemy
Act, 50 U.S.C.A.Appendix, §§ 1–40. The
plaintiff brought suit, under Section 9(a)
of the Act, to recover certain property
which had belonged to her and which was
vested by orders of the Alien Property
Custodian in 1947 and 1950. The district
judge entered judgment in her favor,
Willenbrock v. Brownell, D.C.E.D.Pa.
1957, 152 F.Supp. 351, and the Attorney
General, Successor to the Alien Property
Custodian,[1] appeals.

The significant facts are few. Miss
Willenbrock was German born. She was
naturalized in this country in 1928. In
1932, while in France, employed as a
governess by an American employer, she
went back to Germany to take care of her

---

[1] Pursuant to Exec. Order No. 9788, 3 C.F.R. 169 (1943–48 comp.), 50 U.S.C.A. Appen-
dix, § 6 note.

father and remained in Germany after his death in 1933. Except for eight months she was in Germany from 1932 to 1949. She inherited some property and lived off the income therefrom until the premises were destroyed by a bomb during the war. She lost her first naturalization for reasons not necessary to go into here and was again naturalized in 1955. The plaintiff's state of mind is summed up by the trial judge in saying that "she never wanted to be considered a German citizen or resident, that she desired to be, at all times, an American citizen and to return to the United States to live when it appeared to her to be possible to do so without sacrificing her German property interests."

Section 9(a) permits suit in the district court by "any person not an enemy" as defined in Section 2(a) of the statute. The question to be decided, therefore, is the very narrow one whether the plaintiff is included within the statutory exclusion. It does not, however, turn upon finding that Miss Willenbrock was or was not an "enemy" of the United States in any literal sense. No one suggests that she was in any way disloyal to her adopted country. The problem is a technical one concerning the interpretation of the language in Section 2(a). There enemy is defined, inter alia, as "any individual * * * resident within the territory * * * of any nation with which the United States is at war."

During the war was the plaintiff "resident" in Germany? The words "resident" and "residence" have no precise legal meaning although they are favorite words of legislators. Sometimes they mean domicile plus physical presence; sometimes they mean domicile; sometimes they mean something less than domicile. All this is well established and the general statement would not be

quarreled with.[2] We think the learned district judge in this case inclined to treat the term as though "residence" in the statute involved domicile. If the issue were domicile a good case could be made for finding that the plaintiff did not become domiciled in Germany because she always intended to return to the United States when she could do so without sacrificing her property interests. Cf. Dupuy v. Wurtz, 1873, 53 N.Y. 556.

We think, however, the authority which controls us here is Guessefeldt v. McGrath, 1951, 342 U.S. 308, 72 S.Ct. 338, 341, 96 L.Ed. 342. While the members of the Supreme Court differed as to one of the points in the case, they did not disagree with Mr. Justice Frankfurter's description of the content of "residence." Backed up by the legislative history the Court said, " 'resident within' enemy territory implies something more than mere physical presence and something less than domicile."

If the term means something less than domicile we are quite clear that this plaintiff was resident in Germany. The length of time she was there is certainly indicative. One may, perhaps, stay in a place for seventeen years without becoming domiciled there; surely it is hard to think of a person staying that long without becoming a resident. Seventeen years is no temporary sojourn by any test. Furthermore, the plaintiff was not constrained to stay in Germany. See Guessefeldt v. McGrath, supra; United States v. Stabler, 3 Cir., 1948, 169 F.2d 995. The fact that one stays in a place by reason of economic desirability does not prevent the acquisition of a domicile there,[3] much less should it prevent one's being a resident.

Our conclusion that plaintiff was resident in Germany is supported by Brow-

---

**2.** See McGrath v. Kristensen, 1950, 340 U.S. 162, 71 S.Ct. 224, 95 L.Ed. 173; United States v. Stabler, 3 Cir., 1948, 169 F.2d 995; Goodrich, Conflict of Laws 50–51 (3d ed. 1949); Beale, Residence and Domicile, 4 Iowa Law Bull. 3 (1918); Reese & Green, That Elusive Word, "Residence," 6 Vand.L.Rev. 561 (1953); Restatement, Conflict of Laws 2d, § 9, com. j (Tent. Draft No. 2, 1954).

**3.** See 1 Beale, Conflict of Laws § 22.1 (1935); Goodrich, Conflict of Laws § 29 (3d ed. 1949).

nell v. Oehmichen, 100 U.S.App.D.C. 214, 243 F.2d 637, certiorari denied, 1957, 355 U.S. 842, 78 S.Ct. 49, 2 L.Ed.2d 1. There is some trouble with Kaku Nagano v. McGrath, 7 Cir., 1951, 187 F.2d 759, affirmed per curiam by an equally divided Court, 1952, 342 U.S. 916, 72 S.Ct. 363, 96 L.Ed. 685. Perhaps it can be explained, as the Government suggests, by the allegation of Mrs. Nagano that she was compelled to stay with her children in Japan.[4] Be that as it may, we think that the Guessefeldt case cited above gives us our mandate here.

There is a further element in this case, however, which was not brought to the notice of the court by counsel for either party. It was mentioned that there are two vesting orders. One was in 1947 (No. 9925, 12 Fed.Reg. 6797), and the other was in 1950 (No. 16340, 16 Fed. Reg. 107). The 1947 order had to do, according to an exhibit in the case, with the savings account which plaintiff had with the Girard Trust Company of Philadelphia. The vesting order does not say how much is involved but the judgment of the court indicates that it is $1,769.91. What has been said above with regard to "residence" applies to this order because plaintiff was a resident of Germany at the time.

Now the second vesting order bears date 1950. It has to do with ten shares of Pennsylvania Railroad stock and two declarations of trust certificates issued by City Bank Farmers Trust Company of New York. The value of the property in this seizure according to the judgment in the court below is $6,500. The complaint in this case says that the plaintiff returned to the United States October 16, 1949 and took up her residence in the Eastern District of Pennsylvania. The answer is an enigmatic one because it denies the allegation of this particular paragraph to the effect the plaintiff was a nonenemy. There is no finding of fact on the subject.

Assuming that it can be shown that the plaintiff was a resident of Pennsylvania beginning October 16, 1949, the provision of the statute discussed above does not apply to her. The vesting order applies to the situation existing at its date. Swiss Nat. Ins. Co. v. Miller, 1925, 267 U.S. 42, 45 S.Ct. 213, 69 L.Ed. 504; Rudenberg v. Clark, D.C.D.Mass.1947, 72 F.Supp. 381, 383.

One more point is to be noticed. Following the description of the property in the second paragraph of the vesting order there is a clause saying:

" * * * hereby determined:

"3. That to the extent that the person named in subparagraph 1 hereof is not within a designated enemy country, the national interest of the United States requires that such person be treated as a national of a designated enemy country (Germany)."

Then there is a line drawn to some fine print below which says:

"all determinations and all action required by law, including appropriate consultation and certification, having been made and taken, and, it being deemed necessary in the national interest * * *"

However, this portion of the order seems not to be relevant to our case. The language of the Executive Order 9193, July 6, 1942, 50 U.S.C.A.Appendix, § 6 note, excludes from the category of that which may be seized " * * * credit instruments * * * and securities" except to the extent that the Alien Property Custodian determines that the inclusion of these items is necessary. We have no record of any such determination by him.

It appears, therefore, that the judgment of the court below must be reversed as to the property included in the first seizure of 1947 but as to that which

---

4. When the case came back after remand, the "law of the case" doctrine was heavily emphasized in the court's opinion. Ka-ku Nagano v. Brownell, 7 Cir., 1954, 212 F.2d 262.

was taken under the 1950 vesting order, it would appear that the plaintiff is entitled to recover if in fact she no longer was a resident of Germany when the 1950 order became effective.