No. 907. N. V. HANDELSBUREAU LA MOLA *v.* KEN-
NEDY, ATTORNEY GENERAL. United States Court of
Appeals for the District of Columbia Circuit. Certiorari
denied. *Lawrence S. Lesser* and *Dinsmore Adams* for
petitioner. *Solicitor General Cox, Assistant Attorney
General Orrick, John G. Laughlin, Jr.* and *Pauline B.
Heller* for respondent.

MR. JUSTICE BLACK dissents:

The Trading with the Enemy Act [1] authorizes the Gov-
ernment to seize and confiscate under some circumstances
the property of aliens. By its denial of certiorari in this
case the Court leaves standing a judgment of confiscation [2]
under circumstances which in my judgment the Act does
not authorize. I therefore feel impelled to dissent.

In May 1940 Hitler's forces, violating the historic neu-
trality of the Netherlands, suddenly invaded that country,
largely destroyed one of its finest cities and within a
short time occupied the whole country. Although the
United States soon recognized and allied itself with a
group of Royal Netherlands citizens who had escaped and
set up an independent government-in-exile in London,[3]
that occupation continued until May 1945 when troops
from this country and its allies finally managed to liberate
the Netherlands from the German forces. Within sev-
eral weeks this country's ally, the Free Netherlands Gov-
ernment, assumed lawful command of its own citizens and
territory. It was not, however, until some five and a

---

[1] 40 Stat. 411, as amended, 50 U. S. C. App. § 1 *et seq.*

[2] 112 U. S. App. D. C. 92, 299 F. 2d 923.

[3] See Mutual Aid Agreement between the United States and the
Netherlands, July 8, 1942, 56 Stat. 1554; and Mutual Aid Agreement,
April 30, 1945, 59 Stat. 1627.

half years later, long after the end of the Nazi occupation and the return of the lawful government of the Netherlands, that the Alien Property Custodian in 1951, purportedly acting under the Trading with the Enemy Act, seized and confiscated the four bank accounts in this country which belonged to the petitioning Dutch company and which form the object of this lawsuit. That confiscation of petitioner's property was sustained by the Court of Appeals on the sole ground that the Netherlands, our friend and ally, where petitioner was incorporated, had been overrun and occupied by Germany during the war. Because this result seems so contrary to the purpose of Congress in passing the Trading with the Enemy Act and raises such grave constitutional questions under the Fifth Amendment's command that the Government not take private property without paying just compensation, I think we should grant certiorari to review the Court of Appeals' decision.

The Trading with the Enemy Act provides that the President may seize "During the time of war" "any property in which any foreign country or any national thereof has or has had any interest." That Act also provides, however, that "Any person not an enemy or ally of enemy" may sue to compel the return of his property. And even though the Act defines an "enemy" as "Any individual, partnership, or other body of individuals, of any nationality, resident within the territory (including that occupied by the military and naval forces) of any nation with which the United States is at war . . . and any corporation incorporated within such territory . . . ," it does not say, as did the Court of Appeals, that every corporation which was at any time present within the territory while that territory was occupied by an enemy is an "enemy" within the meaning of the Act. I do not see how it can be thought that Congress intended by this Act to authorize

942

the confiscation, between the end of actual occupation in 1945 and the official end of the war in 1951,[4] of every bit of property in this country owned by the citizens and corporations of the Netherlands, France, Norway, Belgium and other countries solely because those countries, our staunch friends and allies, had during the war been overrun by an enemy that was trying to destroy them and us.[5] I can understand how Congress might be thought to have desired to authorize the President to seize the property of citizens and corporations of friendly countries and allies when those countries were at the time being occupied by an enemy which might be able to use their property to carry on war against us. I do not believe, however, that Congress intended to place a permanent taint on the property of our friends so that whenever that property showed up in this country it might be seized—even though long after our friends' countries had been fortunate enough to escape the occupation clutches of our common enemy. It would be bad enough after the end of occupation to confiscate the property of friendly aliens which had been in this country during the occupation but to go beyond that and confiscate as here a bank account which did not even exist in this country until 1948, three years after the return of lawful government to the Netherlands, seems wholly contrary to any purpose Congress could have had in the Act. Moreover, to construe this statute this way raises serious questions about the constitutionality of the Act as applied, for it has long been settled that the provision of the Fifth Amendment requiring the payment of just compensation

---

[4] Joint Resolution to terminate the state of war between the United States and the Government of Germany, October 19, 1951, 65 Stat. 451.

[5] Cf. *Willenbrock* v. *Rogers*, 255 F. 2d 236.

when private property is taken for public use protects friendly aliens as well as citizens.[6]   And it is obviously no answer to this to say, as did the Court of Appeals, that the confiscation was proper because this Government needed the property after the war to support the cost of its past war efforts.   Our constitutional guarantee against uncompensated government seizure of private property surely does not melt away merely because public officials believe the Government needs to seize property without paying for it.

This case would of course be far different if the Court of Appeals had rested on the two other grounds urged by the Government below: (1) that petitioner was "enemy-tainted," (2) and also that it was engaged in doing business in Germany which was enemy territory.   But the Court of Appeals did not rest on either of these grounds and we must accept the case as it comes to us or fail to accord petitioner its full day in court.   This is particularly true here, since the question of enemy domination, if litigated, would have to be decided in light of *Kaufman* v. *Societe Internationale*,[7] where we held that innocent stockholders even of enemy corporations must be protected from having their property confiscated.

It is true that the refusal of the Court to grant certiorari in this case gives no express approval to the interpretation of the Act made by the Court of Appeals and leaves that question open for final authoritative decision later.   The Court's refusal to act now, however, does leave standing the Court of Appeals' decision as a precedent in the lower federal courts which will until reviewed here hang as a cloud over the property rights in this country of citizens of foreign countries.

---

[6] *Russian Volunteer Fleet* v. *United States*, 282 U. S. 481, 491–492.

[7] 343 U. S. 156.