**TRANSPORTES AEROS MERCANTILES PANAMERICANOS, S.A., Jorge Coulson, Ricardo Coulson, and Antonio Campillo, Plaintiffs,**

v.

**Thomas D. BOYATT, Robert N. Battard, and Winston E. Pitman, Defendants.**

No. 82–1366–Civ–CA.

United States District Court, S.D. Florida.

March 31, 1983.

On Motions to Dismiss April 4, 1983.

Ana Barnett, Asst. U.S. Atty., Miami, for the government.

Richard Brodsky, Miami, Fla., for plaintiffs.

## ORDER OF PARTIAL DISMISSAL

ATKINS, District Judge.

THIS CAUSE is before the Court on motion of defendant THOMAS D. BOYATT ("Boyatt") to dismiss counts two and three of the complaint. Plaintiffs, a Colombian corporation and three Colombian citizens, have sued Boyatt, the United States Ambassador to the Republic of Columbia, for defamation (count two) and violation of plaintiffs' constitutional right to due process of law (count three). Boyatt claims that this Court lacks both subject matter and personal jurisdiction, that venue is improper in this district, and that plaintiffs have failed to state a claim against him for which relief may be granted. For the reasons hereafter recited, the motion is granted.

Plaintiffs, a Colombian commercial cargo airline and its principals, leased a Boeing 707 cargo aircraft for their operations between Colombia and the United States. Complaint ¶ 11. On March 10, 1982, United States Customs officials seized the aircraft in Miami after having found a large quantity of cocaine aboard it. Complaint ¶¶ 14–17. On March 16, 1982, Boyatt sent a letter, on Embassy stationery, to Dr. Alvaro Uribe Velez, Director of the Departmento Administravivo de Aeoronautica Civil of the Republic of Colombia, ("Colombian CAB"). In the letter Boyatt alleged that "both Colombian and United States authorities have very solid evidence that indicates that several officers of the TAMPA company are involved in [the shipment of cocaine]" and requested that the Colombian Government suspend TAMPA operations in the United States pending completion of an official investigation. Complaint, Exhibit "A". On March 23, 1982 the Colombian CAB suspended TAMPA's United States operations pending the conclusion of the investigation. Complaint, Exhibit "B". On May 6, 1982, however, the Colombian CAB revoked the suspension due to lack of evidence of criminal involvement on the part of the officers of TAMPA. Complaint, Exhibit "D".

## 1. PERSONAL JURISDICTION AND VENUE

■ Plaintiffs allege that the communication of Boyatt's letter to persons in Florida, concerning an incident that oc-

curred in Florida, resulted in the publication of a defamatory statement in the state of Florida. This in turn allegedly led to substantial injury to plaintiffs' reputation and business interests in the state. In a case brought under Federal question jurisdiction the amenability of a defendant to suit here must be measured by the defendant's contacts with this forum. Defendant must have had minimum contacts with the forum such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice". *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In addition, the Court must look to defendant's alleged conduct and determine whether he should have reasonably anticipated being haled into this Court. *WorldWide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Upon consideration of the complaint and the memoranda of law submitted by the parties, the Court concludes that it does have personal jurisdiction over defendant Boyatt and that exercise of this jurisdiction does not violate the due process clause of the Fifth Amendment. The Court also finds that venue is proper in this district under 28 U.S.C. § 1391(b).

## 2. SUBJECT MATTER JURISDICTION

"The essence of the Plaintiffs' claim is that Boyatt, acting outside the scope of his office, maliciously defamed the Plaintiffs with the intent that the defamatory statements cause substantial injury to the Plaintiffs' reputation and property interests in Colombia and in the United States." Plaintiffs' Response to Defendants' Motions to Dismiss 12. Plaintiffs claim that the violation of their liberty or property interest in their reputation, coupled with the taking of property by the tangible loss to TAMPA's business, is sufficient to invoke the due process clause of the Fifth Amendment and

that this Court therefore has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. Plaintiffs concede that this Court's jurisdiction, if any, over their defamation claims is pendent to its jurisdiction over their constitutional claims.

Boyatt's actions were subsequent to Pitman's and Battard's actions, so Boyatt cannot be held accountable for the seizure of the airplane in Miami. There are two actions on which plaintiffs may seek to premise their claim that Boyatt committed a "constitutional tort":

a) Boyatt's alleged defamation of plaintiffs in his letter of March 16, 1982, and

b) the Colombian CAB's suspension of TAMPA's United States operations from March 23, 1982 through May 6, 1982.

This Court doubts that a *Bivens*-type action [1] is available to alien plaintiffs for acts allegedly committed by a United States official in Colombia. It is well established that the constitution protects United States citizens against misconduct by United States officials in a foreign country. *Reid v. Covert,* 354 U.S. 1, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957); *United States v. Conroy,* 589 F.2d 1258, 1264 (5th Cir.1979). It is equally clear that aliens may sue for damages inflicted on them by the unconstitutional conduct of the United States Government in the United States. *Russian Volunteer Fleet v. United States,* 282 U.S. 481, 51 S.Ct. 229, 75 L.Ed. 473 (1931). The Second Circuit Court of Appeals has held that the Fourth and Fifth Amendment protect aliens against kidnapping, torture, and illegal electronic surveillance by American agents in foreign countries. *United States v. Toscanino,* 500 F.2d 267, 280 (2d Cir.1974), *reh. denied,* 504 F.2d 1380; *See also United States v. Lira,* 515 F.2d 68 (2d Cir.1975), *cert. denied,* 423 U.S. 847, 96 S.Ct. 87, 46 L.Ed.2d 69. *Toscanino* was, however, a

---

1. *Bivens v. Six Unknown Named Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) established that injury to a constitutionally protected interest could be vindicated by a suit for damages under the general federal question jurisdiction of the courts against the responsible federal official. In *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1976) the Court extended *Bivens* to claims arising directly under the Fifth Amendment.

criminal prosecution and the *Toscanino* court merely held that the Government may not profit by its own unconstitutional acts; the court allowed Toscanino to raise the Government's alleged conduct as a defense to prosecution.

Plaintiffs here, Colombian nationals all, seek to invoke provisions of the United States Constitution to wrest damages from United States officials for acts committed in Colombia. I am not convinced that the reasoning of *Toscanino* and *Russian Volunteer Fleet* can or ought to be stretched so far.[2]

■ Even assuming *arguendo* that plaintiffs have standing to bring a *Bivens*-type action against Boyatt, they have failed to state a claim upon which relief may be granted under the Fifth Amendment. The Supreme Court has stated unequivocally that mere defamation by a public official, including imputing criminal behavior to that individual, does not violate that individual's constitutional rights. *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). The Court specifically rejected the claim that the "infliction by state officials of a 'stigma to one's reputation'" represents a taking of liberty or property under the Fourteenth (and therefore also the Fifth) Amendment. 424 U.S. at 701–712, 96 S.Ct. at 1160–1165. Thus, it is clear that Boyatt's alleged conduct standing alone would not support a constitutional claim.

The acts of the Colombian CAB, standing alone, also fail to support plaintiffs' claim insofar as the independent actions of foreign officials in their own country are not within the scope of the United States Constitution. *United States v. Morrow*, 537 F.2d 120, 139–141 (5th Cir.1976), *cert. denied*, 430 U.S. 956, 97 S.Ct. 1602, 51 L.Ed.2d

806 (1977); *Birdsell v. United States*, 346 F.2d 775, 783 (5th Cir.1965); *United States v. Toscanino*, 500 F.2d at 280; *See United States v. Conroy*, 589 F.2d 1258, 1265 n. 9 (5th Cir.1979), *reh. denied*, 594 F.2d 241, *cert. denied*, 444 U.S. 831, 100 S.Ct. 60, 62 L.Ed.2d 40 (cases cited therein).

The plaintiffs argue that Boyatt must bear constitutional responsibility for the actions of the Colombian CAB since his letter triggered that action. Several courts have adopted the view that United States officials may be held accountable for the acts of foreign officials if the foreign officials acted as agents for or as joint venturers with the United States officials. *Stonehill v. United States*, 405 F.2d 738 (9th Cir. 1968), *cert. denied*, 395 U.S. 960, 89 S.Ct. 2102, 23 L.Ed.2d 747 (1969); *United States v. Toscanino*, 500 F.2d at 280.[3] To invoke this doctrine plaintiff must, however, allege that the United States officials did more than merely invoke the cooperation of foreign officials. *United States v. Lira*, 515 F.2d 68; *United States v. Morrow*, 537 F.2d at 139–141. For example, the court in *Lira* held that the United States cannot be held vicariously liable for the actions of Chilean officials when the United States Government "merely asked the Chilean government to arrest and expel [the defendant] in accord with its own procedures." 515 F.2d at 71. Both the Second Circuit in *Lira* and the Fifth Circuit in *Morrow* noted that such minimal participation in invoking foreign action is a necessary and constitutionally sound aspect of law enforcement. Boyatt merely asked the Colombian CAB to institute its own administrative procedures against plaintiffs. This is less intrusive than the requests for arrest and expulsion

---

**2.** *But see Di Lorenzo v. United States*, 496 F.Supp. 79 (S.D.N.Y.1980). The *Di Lorenzo* court allowed the plaintiff in that case to maintain a *Bivens*-type action against federal agents who allegedly kidnapped him in Panama. That court did not specify, however, whether the plaintiff was a United States citizen.

**3.** In *Birdsell v. United States*, 346 F.2d at 782, the Fifth Circuit Court of Appeals held that the

Fourth Amendment was "inapplicable to an action by a foreign sovereign in its own territory in enforcing its own laws, even though American officials were present and cooperated in some degree." The Fifth Circuit has since noted the joint venture test of *Stonehill* but has expressly declined to decide whether to follow *Stonehill* or to adhere to *Birdsell*. *United States v. Morrow*, 537 F.2d at 140.

in *Lira* and *Morrow*.[4] Plaintiffs thus have failed to allege a sufficient basis to find Boyatt constitutionally accountable for the actions of the Colombian CAB. Count Three must therefore be dismissed pursuant to Fed.R.Civ.P. 12(b)(6), and Count Two must be dismissed for lack of subject matter jurisdiction. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Accordingly, IT IS ORDERED AND ADJUDGED that defendant Boyatt's Motion to Dismiss is GRANTED. Counts Two and Three of plaintiffs' complaint are hereby DISMISSED.

## ON MOTIONS TO DISMISS

THIS MATTER is before the Court on the motion of defendants Robert N. Battard and Winston E. Pitman to dismiss count one of this complaint (this Court has previously granted defendant Boyatt's motion to dismiss counts two and three of the complaint). Defendants claim that this Court lacks subject matter jurisdiction over this action and that plaintiffs have failed to state a claim on which relief may be granted. For the reasons stated below this motion is denied.

This is a *Bivens*[1] action against federal officers for damages allegedly arising from the officers' unconstitutional conduct. Battard is the Regional Commissioner of the U.S. Customs Service, and Pitman is the District Director of the U.S. Customs Service. Plaintiffs allege that Battard and Pitman violated plaintiffs Fifth Amendment rights to due process of law and equal protection of law by referring the case of plaintiffs' aircraft to the U.S. Attorney immediately upon seizure, by seizure of the aircraft without probable cause, and by arbitrarily and capriciously seizing the aircraft.

Plaintiffs allegedly leased the Boeing 707 cargo aircraft in question from International Air Leases, Inc. Complaint ¶¶ 11–27.

The aircraft arrived in Miami on March 9, 1983. Shortly thereafter Customs officials arrived and ascertained that there was (or had been) approximately 3,900 pounds of cocaine on board the aircraft upon its arrival from Colombia. Defendants Battard and Pitman were notified of the situation and came to the airport to inspect the airplane and the contraband. On March 10, 1982 the aircraft was officially seized. Insofar as plaintiff TRANSPORTES AEROS MERCANTILES PANAMERICANOS, S.A. ("TAMPA") is a common carrier, plaintiffs maintain that defendants actions were arbitrary and without probable cause to believe the aircraft was subject to forfeiture.

■ Upon reviewing the pleadings, motions, and memoranda of law submitted by the parties, the Court concludes that it does have subject matter jurisdiction of this action. A federal court must determine whether it has jurisdiction over a *Bivens*-type action by considering the allegations in the complaint to be true and determining whether a cause of action under the constitution has been stated. *Rodriguez v. Ritchey*, 556 F.2d 1185, 1189–1192 (5th Cir. 1977) (*en banc*), *cert. denied*, 434 U.S. 1047, 98 S.Ct. 894, 54 L.Ed.2d 799 (1978). This Court finds that plaintiffs have done so.

■ The statutes relied on by the Government in seizing the aircraft all provide that if the vessel involved is owned or operated as a common carrier, it may not be forfeited unless the Government can show that the owner consented or was privy to the use of the vessel for transporting contraband. 19 U.S.C. § 1595(a); 21 U.S.C. § 881; 49 U.S.C. § 782. It follows that the Government may not seize the vessel without probable cause to believe that this was the case. Plaintiffs thus allege facts sufficient to support a claim that defendants actions in seizing the aircraft violated plaintiffs' rights under the Fifth Amendment. Complaint ¶¶ 19–22, 25.

---

**4.** The Court further notes that in this action, unlike *Morrow, Lira, Toscanino* or *Di Lorenzo*, there is no allegation that the foreign officials did anything that would shock the conscience or even that would violate the Fifth Amendment guarantee of due process if done by United States officials.

Defendants nonetheless argue that this claim is barred by defendants' absolute immunity. The only immunity applicable to this action would be a qualified immunity. Qualified immunity is an affirmative defense to be plead, and is not a ground for dismissal under Fed.R.Civ.P. 12(b)(6). *Harlow v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Accordingly, IT IS ORDERED AND ADJUDGED that defendants BATTARD's and PITMAN's Motion to Dismiss is DENIED.