[redacted]

**Marie Louise WILLENBROCK**

**v.**

**Herbert BROWNELL, Jr., Attorney General of the United States as successor to the Alien Property Custodian.**

**Civ. A. No. 20170.**

United States District Court
E. D. Pennsylvania.

May 28, 1957.

[redacted]

T. Henry Walnut, Philadelphia, Pa., for plaintiff.

Harold K. Wood, U. S. Atty., Joseph L. McGlynn, Jr., Asst. U. S. Atty., Philadelphia, Pa., Westley W. Silvian and Thomas J. Brennan, Dept. of Justice, Office of Alien Property, Washington, D. C., for defendant.

KIRKPATRICK, Chief Judge.

This is an action brought under Section 9(a) of the Trading with the Enemy Act of 1917 to recover certain property belonging to the plaintiff which was vested by orders of the Alien Property Custodian in 1947 and 1950. The Act provides that the remedy by suit in the district court is available to "any person not an enemy * * *" and defines [in Section 2(a)] the word "enemy" as "any individual * * * resident within the territory * * * of any nation with which the United States is at war". It will be noted that the definition is broad enough to include citizens of the United States, so that whether Miss Willenbrock remained an American citizen during the war or whether she had lost her citizenship is not controlling. Miss Willenbrock, the plaintiff, was in Germany from 1932 to 1949, with the exception of one stay of eight months in the United States and the only question is whether she was "resident within" Germany during the war.

There is no dispute as to any material facts in connection with her stay in Germany except the vitally important ones of the motivating causes of her remaining there and her intention with regard to returning to the United States.

Miss Willenbrock was born in Germany in 1884, came to this country in 1908, and became an American citizen in 1928. In 1932, while traveling as a child's governess with her employer, she learned of the death of her stepmother. Her father was then 80 years old and

Miss Willenbrock gave up her job and went to Bremen to take care of him. He died in 1933 leaving an estate consisting of a restaurant property, with an apartment above, and a small amount of money. The restaurant was leased and brought in a sufficient amount of money to enable Miss Willenbrock to live without seeking employment. There were five heirs, three of whom lived in the United States. The handling of the estate naturally involved delay, and currency restrictions would have made it difficult to get the proceeds of any sale of the property out of Germany, though, contrary to her belief, it would not have been impossible. In 1936 Miss Willenbrock, still living in the apartment, supported mainly by the rent from the restaurant, bought the shares of the other heirs.

After her return to Germany from an eight months sojourn in the United States (1934–1935) she obtained extensions of her passport until 1938, when the State Department refused a further extension. At that time it was explained to her by the American Consul that her failure to return to the United States would result in her expatriation. Accepting this advice, which may or may not have been sound, she regarded her United States citizenship as cancelled when she thereafter, for reasons having to do with the management of her property, decided to remain in Germany. At this time she refused to sign a consent to her denaturalization. She also refused to accept German citizenship and was registered with the police as a stateless person and given an identity card, as a foreigner, which was renewed annually.

As soon as the war was over she made every effort to return to the United States. Believing, perhaps correctly, that she would not be able to enter this country as an American citizen, without a passport, and being advised that she could get in under the German quota, she arranged, in 1947, to be voluntarily expatriated and executed a form of consent to the entry of a decree in a United States District Court voiding her naturalization. Thereafter, in 1949, she applied for an immigration visa stating that her last permanent residence was Germany and, as a result, was admitted to the United States as a German quota immigrant, but as a stateless person, not as a German citizen.

In Nagano v. McGrath, 7 Cir., 187 F. 2d 759, 762, the Court discussed the meaning of "resident within" in the statute and sustained a complaint which disclosed that the plaintiff had resided in Japan for a period of 29 years, including the war years, with only two short visits to the United States during the entire period. It appears from this and other decisions that the courts have regarded the word as meaning something more than mere physical presence—rather closer to "domicile" than to "residence" as those terms are generally applied. Clearly, in the Nagano case, supra, the plaintiff's "constant intention to return to her husband and her American residence at the earliest date possible" was a far more important factor than the fact that she was actually living in Japan for 29 years, during 19 of which she could have returned to the United States.

In the present case, while the plaintiff's conduct has not been consistent, I am of the opinion that throughout her stay in Germany she, at all times, had the intention to return to the United States when arrangements in connection with her property satisfactory to her had been made. It is plain that she did not attempt to push the sale of it. She did inquire at the Reichsbank whether, in the event of sale, she could take the proceeds with her to the United States and was incorrectly informed that she could not. Without inquiring further she accepted the statement. How long she would have remained had the war not intervened and the property not been destroyed, as it was in 1944, is not easy to say, but I find that she never considered her residence in Germany to be permanent and that she intended to come

back to America as soon as things worked out satisfactorily for her.

■ Of course, it was convenient and comfortable for her to remain living in the apartment and I have no doubt that her stay could have been considerably shortened without causing her any very great loss, but that does not mean that she had given up her intention to resume her United States residence. The fact that the circumstances which cause a citizen to elect to remain abroad for an extended period fall short of compelling necessity is not conclusive against an intention to return. If the motive for staying away seems trivial and inadequate, it may be strong evidence of the opposite intention, but the conduct of the citizen in other ways may overbalance it. The ultimate question is one of fact which must be resolved, like any other question of fact, not by any fixed formula but by an appraisal of all the evidence in the case.

Miss Willenbrock's consent to the cancellation of her naturalization here is really more strongly indicative of an intention to reside in the United States than the contrary. So far as she knew, it was, for her, as a stateless person, the only way she could get back.

I think it is very important that she at all times refused to accept German nationality. Obviously, to have done so would have made things very much easier for her during the war.

She belonged to no German organizations other than her church. As soon as the war was over, she volunteered her services to the American Red Cross which she served faithfully until her return to the United States. Many decisions interpreting the statute seem to suggest that the courts have considered some degree of adherence to the enemy as a factor. Nothing in this case has cast any doubt upon Miss Willenbrock's continued loyalty to the United States.

My effort to arrive at her intention really sums up to saying that she never wanted to be considered a German citizen or resident, that she desired to be, at all times, an American citizen and to return to the United States to live when it appeared to her to be possible to do so without sacrificing her German property interests.

■ The defendant challenges the jurisdiction of this court, contending that Miss Willenbrock was not a resident of this district as required by the statute when she instituted the action. The fact is that she had been employed in this district for approximately four years before suit was started except for an eight month period, when she returned to Germany to sell her property. She left for California the day suit was started, after signing the complaint. I conclude that she was a resident of this district when she signed the complaint and that she did not abandon her residence here until she, in fact, left, and that her departure later the same day in no way relates back in time.

The parties have presented elaborate requests for findings of fact which have been very helpful but which it seems unnecessary to answer seriatim, inasmuch as most of them are undisputed. The statements of fact in the foregoing opinion may be taken as my findings of fact and I believe they cover all the material facts necessary to the conclusion reached.

■ My conclusion of law is that the plaintiff was not "resident within" Germany after the declaration of war between Germany and the United States or at any time since October 15, 1932, in the sense in which that phrase is interpreted and applied for the purposes of the Trading with the Enemy Act.

I affirm the defendant's first request for a conclusion of law. All the other requests of either party for conclusions of law have, so far as material, been answered in the opinion.

An appropriate order for judgment may be submitted.