**In the Matter of the Application for a Writ of Habeas Corpus for LI, Shi Zhou; Chen, Chun Chuan; Li, Yi Dao; Li, Shi Bao; Li, Kang; Li, Chen; Li, Hui; Song, Fei Wu and John Does 1–90.**

No. 99–00664 DAE.

United States District Court, D. Hawaii.

Oct. 8, 1999.

Philip H. Lowenthal, Graham D. Mottola, Lowenthal & August, Wailuku, Maui, HI, for Shi Zhou Li, Chun Chuan Chen, Yi Dao Li, Shi Bao Li, Kang Li, Chen Li, Hui Li, Fei Wu Song, petitioner.

Theodore G. Meeker, Office of the United States Attorney, Honolulu, HI, for United States of America.

Richard D. Gronna, Honolulu, HI, for Yu Chen, movant.

### ORDER GRANTING GOVERNMENT'S MOTION TO DISMISS

DAVID ALAN EZRA, Chief Judge.

The court heard the Government's motion to dismiss on October 1, and October 5, 1999. Philip H. Lowenthal, Esq., appeared at the hearing on behalf of the Applicants; Theodore Meeker, Assistant U.S. Attorney, Mary Osaka, Esq., and Hugh Mullane, Esq., appeared at the hearing on behalf of the Government. After reviewing the motion and the supporting and opposing memoranda, the court GRANTS the Government's motion to dismiss.

## BACKGROUND

On September 28, 1999, Shi Zhou Li, Chun Chuan Chen, Yi Dao Li, Shi Bao Li, Kang Li, Chen Li, Hui Li, Fei Wu Song and John Does 1–90 (representing passengers who were unable to communicate their names) (the "Applicants") filed a Verified Application for Writ of Habeas Corpus. On September 30, 1999, the Government filed a Motion to Dismiss and Opposition to Request for Injunctive Relief. During a hearing on October 1, 1999, the Government stated that the Applicants would not be removed for at least one week, thus the court requested further briefing on the issue. On October 4, 1999, the Applicants filed a response to the Government's motion to Dismiss and the Government filed a supplemental memorandum in support of their motion to dismiss.

The Applicants were passengers on the vessel Xu Ying which was intercepted by the United States Coast Guard and brought to Midway Island. Applicants are presently located at Midway Island and have sought asylum and "credible fear hearings" pursuant to section 208 of the Immigration and Nationality Act (the "INA"). The Immigration and Naturalization Service (the "INS") conducted a detailed screening process of the Applicants for the purpose of identifying persons who have a significant possibility of establishing persecution or a well-founded fear of persecution upon return to China. In addition, a criminal investigation is ongoing regarding possible criminal charges in connection with the transportation of the passengers. After the screening process, some passengers were identified for transfer to the United States where they will be given further consideration in immigration proceedings. Other passengers will be transferred to the United States to face prosecution or serve as material witnesses. The INS anticipates removing the remaining passengers, these Applicants, from Midway Island to the Republic of China without further immigration hearings.

## STANDARD OF REVIEW

A motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief can be granted. Fed. R.Civ.P. 12(b)(6). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 558 (9th Cir.1995) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Dismissal for failure to state a claim is a ruling on a question of law. *Parks School of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir.1995). "The issue is not whether plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir.1987). Review is limited to the contents of the complaint, *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir.1994), including any attached exhibits, *Symington*, 51 F.3d at 1484. To the extent, however, that "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment." Fed.R.Civ.P. 12(b); *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 920 F.2d 1496, 1507 (9th Cir.1990).

Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the non-moving party. *Id.* From the facts alleged, the court must draw all reasonable inferences in favor of the nonmoving party. *Usher*, 828 F.2d at 561. "[C]onclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir.1988). A court "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg*, 18 F.3d at 754–55.

## DISCUSSION

This case involves Applicants who claim that they are entitled to apply for asylum under the INA by virtue of being located on Midway Island. The Government avers that this court does not have jurisdiction to consider Applicants' claim and anticipate removing Applicants from Midway Island without a hearing. The Government claims that Midway Island is not considered part of the United States under the INA and therefore Applicants are not entitled to claim asylum.

An alien who arrives in the United States shall be deemed an applicant for admission. 8 U.S.C. § 1225(a)(1). If an immigration officer determines that an alien who arrives in the United States is inadmissible, the officer must order the alien removed without a further hearing, unless the alien indicates either an intention to apply for asylum or fear of persecution. 8 U.S.C. § 1225(b)(1)(A). If the alien indicates such intention or fear, the immigration officer must refer the alien for an interview by an asylum officer. *Id.*

The issue of whether this court has jurisdiction to review the INS's decision to remove the Applicants without an asylum hearing turns on whether the Government is correct in concluding that Midway Island is outside of the United States for purposes of the INA because if Midway is within the United States then the Applicants have a right to an asylum hearing.

I. *Whether the INS was correct in determining that Midway Island is not part of the United States for purposes of the INA.*

The INA defines the United States "when used in a geographical sense, [as] the continental United States, Alaska, Hawaii, Puerto Rico, Guam and the Virgin Islands of the United States". 8 U.S.C. § 1101(a). Pursuant to this definition, the INS determined that Midway Island is not part of the United States.

If the language of a statute is clear and unambiguous, the court will apply the plain meaning of the language un-less a plain meaning interpretation would lead to an absurd result or a result at odds with the legislature's intent. *Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 835, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990) (quoting *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980)). A rule of statutory construction provides that the expression of one or more items of a class indicates an intent to exclude all items of the same class which are not expressed. *National Railroad Passenger Corp. v. National Association of Railroad Passengers,* 414 U.S. 453, 458, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974).

Here, the plain language of the statute does not include Midway Island as part of the United States. Congress listed Puerto Rico, Guam and the Virgin Islands of the United States as the areas to be considered part of United States. If Congress intended Midway Island to be considered part of the United States for purposes of the INA, Congress easily could have included Midway Island in the definition. Thus, it is clear that Congress did not intend Midway Island to be considered part of the United States for these purposes.

Furthermore, it has long been "recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations." *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). In addition, "judicial deference to the Executive Branch is especially appropriate in the immigration context where officials 'exercise especially sensitive political functions that implicate questions of foreign relations'." *INS v. Aguirre-Aguirre,* 526 U.S. 415, 119 S.Ct. 1439, 1445, 143 L.Ed.2d 590 (1999) (quoting *INS v. Abudu,* 485 U.S. 94, 110, 108 S.Ct. 904, 99 L.Ed.2d 90 (1988)).

■ In reviewing an agency's construction of the statute which it administers, the court should apply the principles of deference described in *Chevron* by asking whether "the statute is silent or ambiguous with respect to the specific issue" before it and if so, "the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron,* 467 U.S. at 842–843, 104 S.Ct. 2778. See also *INS v. Aguirre–Aguirre,* 119 S.Ct. at 1445; *INS v. Cardoza–Fonseca,* 480 U.S. 421, 448, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987).[1]

Here, although the statute does not state that Midway Island is not part of the United States, the statute is not ambiguous on the matter because it specifically excludes Midway Island from the list of areas which comprise the definition of the United States. The statute does not list Midway Island, thus, the court will defer to the INS's appropriate interpretation of the statute it is entrusted to administer.

Applicants also argue that they should be considered constructively within the United States by virtue of being on Midway Island because Midway Island is under the jurisdiction and control of the Department of the Interior of the United States and because the jurisdiction of the United States District Court for the District of Hawaii is extended to all civil and criminal cases arising on or with the Midway Islands.

First of all, simply because the United States has jurisdiction over Midway Island, does not mean that Midway Island is constructively part of the United States for purposes of the INA. The Third Circuit noted in *Yang v. Maugans,* 68 F.3d 1540 (3rd Cir.1995), that Congress had amended the definition of the term "United States" as used in the INA. *Id.* at 1548. In a previous version of the INA the statute defined the United States as follows, "the term United States shall be construed to mean the United States, and any waters, territory, or other place subject to the *jurisdiction* thereof." *Id.* (emphasis added). Congress since amended the statute which currently does not define the United States as including places subject to United States *jurisdiction.*

Second, the term United States has several meanings throughout the United States Code depending on the context. Here, the relevant section defines the United States in a geographical sense and does not include Midway Island. Since

---

1. In *Petition for Naturalization of Rostico Alili Alacar,* 196 F.Supp. 564 (D.Haw.1961), the court held that Midway Island is included in the definition of the United States under the INA and aliens were not precluded from naturalization because they had spent more that one year on Midway Island during the five years preceding the filing of their petitions for naturalization. The court noted that an earlier decision of the same court rendered on November 2, 1959, held that Midway was included within the term, "Hawaii". *Id.* at 566. The court held that "once such a ruling has been made in this court, it would seem that the same ought to be followed until reversed by higher authority, unless on the face of it the decision is patently erroneous." *Id.* at 567. The court stated that even though there was substantial evidence that Midway Island was not part of Hawaii, because there was some "indication in the Hawaii Statehood bill that Hawaii had at least a claim to the Midway Islands when the 1952[INA] was passed, the court could not say that the previous decision was totally without supporting evidence and therefore patently erroneous." *Id.* at 569. Both the *Alacar* case and the previous case reviewed only the legislative history and language regarding Midway before Hawaii was admitted as a state and did not review the Hawaii Admission Act. The Hawaii Admission act clearly excludes Midway Island from the State of Hawaii.

> The State of Hawaii shall consist of all the islands, together with their appurtenant reefs and territorial waters, included in the Territory of Hawaii on the date of enactment of this Act ... but said State shall not be deemed to include the Midway Islands.

Hawaii Admission Act § 2. Also, this case was decided before *Chevron* which requires deference to an agency's interpretation of the statute it is required to administer. Furthermore, the *Alacar* case did not discuss the cannons of statutory interpretation such as reviewing the plain language of a statute. Thus, this court does not find the *Alacar* case to be persuasive authority under the circumstances as they exist today.

there are a multitude of definitions for the United States provided by Congress in different contexts, the court is required to "adhere strictly to the statutory definition applicable to the situation at bar." *Id.* at 1549.

Here, Midway Island is subject to the jurisdiction of the United States. Congress has amended the definition of the United States to specifically remove the words 'other place subject to the jurisdiction thereof.' Thus, it is clear to this court that Congress did not intend Midway Island to be considered constructively within the United States.

II. *Whether this court has jurisdiction to review the agency's decision that the Applicants are not eligible for asylum or further hearings.*

■ Since the Applicants are not within the United States, they do not have an automatic right to a hearing or interview by an asylum officer.[2] Under Section 1225(b)(1)(A)(iii) the Attorney General has the discretion to allow certain other aliens to apply for asylum even though they would not otherwise qualify for the asylum interview. Those sections provide that the "Attorney General *may* apply clauses (i) and (ii) [of section 1225(b)(1)(A) ] to any or all aliens described in subclause II as designated by the Attorney General. Such designation shall be in the sole and unreviewable discretion of the Attorney General...." 8 U.S.C. § 1225(b)(1)(A)(iii) (emphasis added). Subclause II proves that "[a]n alien described in this clause is an alien who ... has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2–year

period immediately prior to the date of the determination of inadmissibility...." *Id.* This provision gives the INS discretion to apply section 1225(b)(1)(A) to certain aliens who do not otherwise qualify to seek asylum.

Here, the INS decided not to exercise their discretion to apply Section 1225(b)(1)(A)(i) and (ii) to these Applicants.[3] Defendants claim that this court lacks jurisdiction to review such a discretionary determination.

As with all cases, the court must first be satisfied that it has jurisdiction. "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210, (1998) (citation omitted).

A. *Section 1252(g)*

Section 1252(g) of the INA entitled Exclusive jurisdiction, provides that "[e]xcept as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g).

In *Reno v. American–Arab Anti–Discrimination Committee,* 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999), the Court held that the exclusive jurisdiction provision deprived courts of jurisdiction over action in which resident aliens alleged

**2.** Section 1225(b)(1), entitled Inspection of aliens arriving in the United States, provides that

[i]f an immigration officer determines that an alien ... who is arriving in the United States ... is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer shall order the alien removed from the United States without further hearing

or review unless the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution.

8 U.S.C. § 1225.

**3.** Although, as indicated above they did provide each alien with a screening interview.

that they had been targeted for deportation because of their affiliation with a politically unpopular group, in violation of their constitutional rights.

In that case, the Supreme Court noted that section 1252(g) applies "only to three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" *Id.* at 943. These three discrete actions "represent the initiation or prosecution of various stages in the deportation process. At each stage the Executive has discretion to abandon the endeavor...." *Id.* "The court rejected the notion that section 1252(g) 'covers the universe of deportation claims.'" *Selgeka v. Carroll*, 184 F.3d 337, 341 (4th Cir.1999). The Supreme Court went on to explain that

> at the time [section 1252(g) ] was enacted the INS had been engaging in a regular practice (which had come to be known as "deferred action") of exercising that discretion for humanitarian reasons or simply for its own convenience. [FN8] As one treatise describes it: "To ameliorate a harsh and unjust outcome, the INS may decline to institute proceedings, terminate proceedings, or decline to execute a final order of deportation. This commendable exercise in administrative discretion, developed without express statutory authorization, originally was known as nonpriority and is now designated as deferred action. A case may be selected for deferred action treatment at any stage of the administrative process. Approval of deferred action status means that, for the humanitarian reasons described below, no action will thereafter be taken to proceed against an apparently deportable alien, even on grounds normally regarded as aggravated." Since no generous act goes unpunished, however, the INS's exercise of this discretion opened the door to litigation in instances where the INS chose not to exercise it. FN8. Prior to 1997, deferred-action decisions were governed by internal INS guidelines which considered, inter alia, such factors as the likelihood of ultimately removing the alien, the presence of sympathetic factors that could adversely affect future cases or generate bad publicity for the INS, and whether the alien had violated a provision that had been given high enforcement priority. These were apparently rescinded on June 27, 1997, but there is no indication that the INS has ceased making this sort of determination on a case-by-case basis.

*American–Arab*, 119 S.Ct. at 943–944 (citations omitted).

"Section 1252(g) seems clearly designed to give some measure of protection to 'no deferred action' decisions and similar discretionary determinations, providing that if they are reviewable at all, they at least will not be made the bases for separate rounds of judicial intervention outside the streamlined process that Congress has designed." *Id.* at 944.

"Discretionary relief is at the core of the prosecutorial function that section 1252(g) insulates from judicial oversight." *Gray v. Reno*, 59 F.Supp.2d 188, 190 (D.Mass. 1999). In *Gray*, the petitioner sought a § 2241 writ directing the Attorney General to exercise her discretion. The court held that directing the Attorney General to exercise her discretion is exactly what section 1252(g) and *American–Arab* render the court powerless to do. *Id.* at 189–90.

Here, based upon the INS's conclusion that the Applicants are not in the United States, the INS determined that the Applicants were not entitled to further immigration proceedings. The INS has discretion to apply the provisions of section 1225(b) to aliens who would not otherwise qualify to seek asylum. However, based upon the initial screening done on Midway Island, the INS chose not to exercise its discretion. The designation of certain aliens is discretionary and as stated in the rule such designation is in the sole and unreviewable discretion of the Attorney General. It is clear that this court does not have

jurisdiction to compel the Attorney General to exercise her discretion to apply the provisions of section 1225(b)(1) to these Applicants. Furthermore, this discretionary action is precisely the type of action which Section 1252(g) and *American–Arab* prevents from review.

> However,

> Exactly what [section 1252(g) ] means was a matter of much legal debate prior to the Supreme Court's decision in *Reno v. American–Arab Anti–Discrimination Committee.* While the holding in *American–Arab* seems clear enough, the controversy over section 1252(g) continues to boil. See *Mustata v. U.S. Department of Justice,* 179 F.3d 1017 (6th Cir. 1999) (1252(g) does not eliminate a district court's jurisdiction to hear an underlying constitutional claim); *Mapoy v. Carroll,* 185 F.3d 224 (4th Cir.1999) (1252(g) divests district courts of jurisdiction to review refusals to grant a suspension of deportation); *Alvidres–Reyes v. Reno,* 180 F.3d 199 (5th Cir. 1999) (same); *Singh v. Reno,* 182 F.3d 504 (7th Cir.1999) (same); *Richardson v. Reno,* 180 F.3d 1311 (11th Cir.1999) (by virtue of 1252(b)(9) a challenge to a final order of removal may be brought only in the court of appeals, IIRIRA precludes 2241 jurisdiction). Compare *Goncalves,* 144 F.3d at 133 (pre–*Arab–American* decision holding that district courts retain 2241 jurisdiction to hear constitutional and some statutory claims).

*Gray,* 59 F.Supp.2d at 189–90 (D.Mass. 1999).

Applicants cite *Selgeka v. Carroll,* 184 F.3d 337 (4th Cir.1999) as support that this court has jurisdiction to review their claim. In that case the plaintiffs were stowaways who landed in the State of Virginia and sought asylum. The plaintiffs claimed that the Attorney General's regulation which provided for INS officers to hear asylum applications of alien stowaways but allowed immigration judges to hear alien nonstowaways' applications violated their due process rights. The court noted that "it is clearly established that aliens have only those rights Congress sees fit to provide. Aliens have no independent constitutional rights in an asylum procedure." *Id.* (citations omitted). Congress had directed the Attorney General to establish a procedure for an alien physically present in the United States irrespective of such alien's status and that pursuant to such directive from Congress, the procedure established must be a fair one. *Id.* The court held that regulation violated the stowaways' due process rights by setting up two different procedures instead of one procedure. The court also held that jurisdiction over the plaintiffs plea for an immigration judge rather than INS employee to hear his application for asylum was proper because it did not challenge the Attorney General's authority to adjudicate cases. *Id.* at 342.[4]

Here, the Applicants are challenging the INS's discretionary decision not to consider the Applicants as eligible for asylum and not to commence proceedings, whereas the stowaways in the *Selgeka* case did not challenge such discretionary action.

---

**4.** Applicants cite *Magana–Pizano v. INS,* 152 F.3d 1213 (9th Cir.1998), amended 159 F.3d 1217 (9th Cir.1998) as support for their claim. However, the judgment in that case was vacated, and the case was remanded to the United States Court of Appeals for the Ninth Circuit for further consideration in light of *Reno v. American–Arab Anti–Discrimination Committee.* Applicants also cite *Hose v. INS,* 180 F.3d 992 (9th Cir.1999), where that court stated "[t]he government also urges us to hold that the district court lacked jurisdiction on a different basis, namely, the government's new construction of 8 U.S.C. § 1252(g) (following the Supreme Court's decision in American–

Arab) that courts lack jurisdiction to grant a deportation stay because it relates to the Attorney General's discretion to "execute removal orders." However, it is not necessary for us to reach that potentially complex question, and we decline to do so. We also expressly decline to decide what habeas corpus remedies, if any, remain under IIRIRA, because such a determination is unnecessary to the resolution of this case." *Id.* at 995. Therefore, these cases do not provide support for Applicants' argument because *Magana–Pizano* did not consider the Supreme Court decision in *American–Arab,* and *Hose* did not reach the question at issue here.

Also, the stowaways landed in Virginia, clearly part of the United States, whereas here the Applicants are not in the United States. Furthermore, as noted by the *Selgeka* court, aliens have only those rights which Congress sees fit to provide. In *Selgeka,* Congress required the Attorney General to establish a fair procedure for aliens physically present in the United States to apply for status. Here, by excluding Midway Island from the definition of the United States, Congress has not provided the Applicants, or other aliens landing on Midway Island, with rights to an asylum hearing.

Applicants argue that the INA effectively eliminates habeas jurisdiction and that such a repeal violates the Suspension Clause. The Suspension Clause, Art. I, 9, cl. 2, of the Constitution provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended." In *United States v. Verdugo–Urquidez,* 494 U.S. 259, 271, 110 S.Ct. 1056, 108 L.Ed.2d 222 (1990), the Supreme Court noted that the defendant in that case relied

> on a series of cases in which we have held that aliens enjoy certain constitutional rights. See, e.g., *Plyler v. Doe,* 457 U.S. 202, 211–212, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982) (illegal aliens protected by Equal Protection Clause); *Kwong Hai Chew v. Colding,* 344 U.S. 590, 596, 73 S.Ct. 472, 97 L.Ed. 576 (1953) (resident alien is a "person" within the meaning of the Fifth Amendment); *Bridges v. Wixon,* 326 U.S. 135, 148, 65 S.Ct. 1443, 89 L.Ed. 2103 (1945) (resident aliens have First Amendment rights); *Russian Volunteer Fleet v. United States,* 282 U.S. 481, 51 S.Ct. 229, 75 L.Ed. 473 (1931) (Just Compensation Clause of Fifth Amendment); *Wong Wing v. United States,* 163 U.S. 228, 238, 16 S.Ct. 977, 41 L.Ed. 140 (1896) (resident aliens entitled to Fifth and Sixth Amendment rights); *Yick Wo v. Hopkins,* 118 U.S. 356, 369, 6 S.Ct. 1064, 30 L.Ed. 220 (1886) (Fourteenth Amendment protects resident aliens). These cases, however, establish only that aliens receive constitutional protec-

tions when they have come within the territory of the United States and developed substantial connections with this country. See, e.g., *Plyler,* supra, 457 U.S. at 212, 102 S.Ct. 2382, (The provisions of the Fourteenth Amendment " 'are universal in their application, to all persons within the territorial jurisdiction . . .' ") (quoting *Yick Wo,* supra, 118 U.S. at 369); *Kwong Hai Chew,* supra, 344 U.S. at 596, n. 5, 73 S.Ct. 472 ("The Bill of Rights is a futile authority for the alien seeking admission for the first time to these shores. But once an alien lawfully enters and resides in this country he becomes invested with the rights guaranteed by the Constitution to all people within our borders") (quoting *Bridges,* supra, 326 U.S. at 161, 65 S.Ct. 1443 (concurring opinion) (emphasis added)). Respondent is an alien who has had no previous significant voluntary connection with the United States, so these cases avail him not.

Here, Congress has not provided the benefit of a Habeas Corpus proceeding for aliens who are not in the United States. Thus, Applicants have no constitutional claim.

Furthermore, the Applicants put forth no facts or laws in support of a claim that the screening process itself was not fairly applied and there was no evidence of bias or unfair treatment in these proceedings. Therefore, the aliens do not have a constitutional or other claim that they are entitled to follow through the system as set forth under the INA.

Applicants also argue that if they are granted some sort of proceeding (the screening process), they should be entitled to follow through with all proceedings provided by the INA and be granted an asylum hearing.

In *Cuban American Bar Ass'n, Inc. v. Christopher,* 43 F.3d 1412 (11th Cir.1995) the court held that leased military bases abroad which continue under sovereignty of foreign nations are not functionally equivalent to being land borders or being

ports of entry of the United States, or otherwise within the United States, and therefore any statutory or constitutional claim made by individual aliens being detained on military base as a safe haven had to be based on extraterritorial application of statutory or constitutional provisions. The court noted that domestic legislation is not presumed to apply extraterritorially absent express congressional authorization, particularly where the court is construing a treaty and statutory provisions that may involve foreign and military affairs for which the President has responsibility. See *Sale v. Haitian Centers Council, Inc.*, 509 U.S. 155, 159, 113 S.Ct. 2549, 125 L.Ed.2d 128 (1993). Statutes and treaties regarding repatriation of refugees were binding on the government only when refugees were at or within the borders of the United States, and did not apply to migrants interdicted on the high seas and placed in safe havens on leased military base under sovereignty of a foreign nation. *Cuban American Bar Association*, 43 F.3d at 1425.

Here, the statutes regarding asylum hearings do apply to the Applicants because the Applicants are not within the United States. Congress did not provide aliens outside the United States with a right to an asylum hearing. Thus, the Applicants have no right to further proceedings because these laws apply only to aliens who are in the United States.

In addition, at the hearing, the Government stated that the Applicants were brought to Midway Island because they were in dire need of food, water and medical care. Once on Midway Island the Applicants were given food and medical care and processed by the INS to see if they had a well founded fear of persecution. The Government argues that if the INS or other government agents were obligated to provide further immigration proceedings to aliens outside the United States under these circumstances then they would be less likely to engage in this type of humanitarian rescue.

In *American–Arab*, the court narrowed the coverage of section 1252(g) to three discrete discretionary actions because Congress intended to protect discretionary decisions of the "Executive from judicial review in the context of the Attorney General's decision to abandon the endeavor [of deportation] for humanitarian reasons or simply for its own convenience." *American–Arab*, 119 S.Ct. at 943. The court stated that the exercise of the INS's discretion opened the door to litigation in instances where the INS chose not to defer deportation such that no generous act goes unpunished. *Id.*

Here, by obligating the INS to follow through with all proceedings, the court would in effect deter the INS or United States Coast Guard from bringing similar passengers to Midway Island for aid. Furthermore, as stated above, since the Applicants are outside the United States, the INA does not require the INS to provide the Applicants with even an inspection or screening proceeding let alone a further asylum hearing.

Thus, based on the plain language of the statute and the Supreme Court's decision in *American–Arab* that discretionary determinations are given some protection from judicial review, this court finds that it does not have jurisdiction over the Applicants' claims under section 1252(g).

### B. *Sections 1252(a) and (e)*

Section 1252(g) begins with the language "[e]xcept as provided in this section" thus the court will consider other provisions of section 1252 to determine whether it has jurisdiction.

Section 1252(a)(2), entitled Matters not subject to judicial review, provides that no court shall have jurisdiction to review the application of section 1225(b)(1) to individual aliens. 8 U.S.C. § 1252(a)(2)(a)(iv). It also provides that except as provided in subsection (e) of this section, no court shall have jurisdiction to review

(i) . . . any individual determination or to entertain any other cause or claim

arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1) of this title,

(ii) . . . a decision by the Attorney General to invoke the provisions of such section, . . .

(iv) . . . procedures and policies adopted by the Attorney General to implement the provisions of section 1225(b)(1) of this title.

8 U.S.C. § 1252(a)(2).

Section 1252(e) provides for limited jurisdiction in a few circumstances.[5] Section 1252(e)(2), entitled Judicial review of orders under section 1225(b)(1), provides

[j]udicial review of any determination made under section 1225(b)(1) of this title is available in habeas corpus proceedings, but shall be limited to determinations of—

(A) whether the petitioner is an alien,

(B) whether the petitioner was ordered removed under such section, and

(C) whether the petitioner can prove by a preponderance of the evidence that the petitioner is an alien lawfully admitted for permanent residence, has been admitted as a refugee under section 1157 of this title, or has been granted asylum under section 1158 of this title, such status not having been terminated, and is entitled to such further inquiry as prescribed by the Attorney General pursuant to section 1225(b)(1)(C) of this title.

8 U.S.C. § 1252(e)(2).

Section 1525(e)(5) provides that

[i]n determining whether an alien has been ordered removed under section 1225(b)(1) of this title, the court's inquiry shall be limited to whether such an order in fact was issued and whether it relates to the petitioner. There shall be no review of whether the alien is actually inadmissible or entitled to any relief from removal.

8 U.S.C. § 1252(e)(5).

Section 1252(e)(2) clearly states that courts are entitled to review of *any determination* made under section 1225(b)(1). Here, INS made determinations under 1225(b)(1) by screening the Applicants, deciding to transfer some passengers to the United States for further immigration determinations and to repatriate the Applicants.

However, the court's jurisdiction under Section 1252(e) is limited to determinations of whether the petitioner is an alien; whether the petitioner was ordered removed; and whether the petitioner can prove that they are lawfully admitted for permanent residence, admitted as a refugee or granted asylum. The court need not make any of these determinations because they are not issues in this case nor are they relevant to the circumstances here. The Applicants are asking the court to determine that when they landed on Midway Island they were arriving in the United States and thus are entitled to seek asylum. This is not one of the limited determinations the court is entitled to make under section 1252(e). Therefore, this court does not have jurisdiction under Section 1252(a) and (e).[6]

---

**5.** The Government asserts that if this court is not deprived of jurisdiction under section 1252(g), then the Applicants' claims should be considered a systemic challenge to the expedited removal process. Government then argues that this court lacks jurisdiction of such systemic challenge under section 1252(e)(3). This section provides that judicial review of determinations under section 1225(b) and its implementation is available in an action instituted in the United States District Court for the District of Columbia and shall be limited to certain determinations. This court recognizes that if Applicants were making a systemic challenge to the validity of the system then

this court also lacks jurisdiction of such claims based on section 1252(e)(3).

**6.** Furthermore, section 1252(f) limits this court's jurisdiction to the application of the INA to individual aliens against whom proceedings have been initiated. Section 1252(f) *"prohibits federal courts from granting classwide injunctive relief against the operation of Sections 1221–1231."* *American–Arab*, 119 S.Ct. at 942. Here, the Applicants, which include John Does, are effectively seeking a classwide injunction by claiming that all aliens who arrive on Midway Island are arriv-

### C. 48 U.S.C. section 644(a)

Applicants also argue that this court has jurisdiction under 48 U.S.C. section 644(a).

48 U.S.C. section 644(a) provides that

The jurisdiction of the United States District Court for the District of Hawaii is extended to all civil and criminal cases arising on or within the Midway Islands.... All civil acts and deeds consummated and taking place on any of these islands or in the waters adjacent thereto ... shall be deemed to have been consummated or committed on the high seas on board a merchant vessel or other vessel belonging to the United States and shall be adjudicated and determined or adjudged and punished according to the laws of the United States relating to such civil acts or offenses on such ships or vessels on the high seas, which laws for the purpose aforesaid are extended over such islands, rocks, and keys.

Applicants' argument is misplaced because this provision does not discuss a court's jurisdiction over INS decisions and 8 U.S.C. section 1252(g) clearly states that notwithstanding any other provision of law, no court shall have jurisdiction to hear claims by aliens arising from certain discretionary action of the Attorney General. Thus, this section does not trump section 1252(g) or extend this court's jurisdiction to the matters under consideration here.

### CONCLUSION

For the reasons stated above, the court lacks jurisdiction to hear Applicants' claims. The Government's motion to dismiss is hereby GRANTED.

The Temporary Restraining Order issued by this court on October 5, 1999 prohibiting the repatriation of the Applicants pending this court's opportunity to carefully consider the constitutional and legal precedent is hereby dissolved.

IT IS SO ORDERED.

---

ing in the United States and thus entitled to seek asylum. Thus, even if jurisdiction were not barred by section 1252(g), the court would not be entitled to grant the Applicants the injunctive relief which they seek.